UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA CRANE | CIVIL ACTION |
| VERSUS | NO. 20-1018 |
| JOHNSON & JOHNSON, et al | SECTION "G"(1) |

**ORDER AND REASONS**

Pending before the Court is Defendants Johnson & Johnson and Ethicon, Inc.'s ("Defendants") "Motion to Dismiss Plaintiff's Complaint for Untimely Service of Process."[1] In this litigation, Plaintiff Lisa Crane ("Plaintiff") alleges that Defendants designed, manufactured, and sold a defective medical product that was implanted in Plaintiff, leading to Plaintiff's injuries.[2] In the instant motion, Defendants argue that Plaintiff's claims should be dismissed because service of process was untimely.[3] Considering the motion, the memoranda in support and opposition, and the applicable law, the Court denies the motion.

**I. Background**

On March 26, 2020, Plaintiff filed a Complaint in this Court naming Johnson & Johnson, Ethicon, Inc. ("Ethicon"), and Gynecare Inc. ("Gynecare")[4] as defendants.[5] According to the Complaint, the companies made, marketed, and sold Prolift, a mesh used to "correct[] vaginal

---

[1] Rec. Doc. 14.

[2] Rec. Doc. 1.

[3] Rec. Doc. 14.

[4] Defendants claim that Gynecare has not existed as a separate entity since January 2000, and, accordingly, is not a proper defendant in this action.

[5] Rec. Doc. 1.

1

prolapse, stress urinary incontinence, pelvic organ prolapse and/or rectocele."[6] Plaintiff claims that Prolift was implanted in Plaintiff and that, as a result of the implantation, Plaintiff suffered "significant pain, internal adhesion, and tissue erosion and complications which required surgery to remove the Prolift system and repair damage it caused."[7]

Plaintiff alleges that Defendants knew Prolift had adverse side effects.[8] Plaintiff claims that Defendants "suppressed this information" while also "fail[ing] to accurately and completely disseminate or share this and other critical information with the FDA, health care providers, and the patients."[9] Plaintiff argues that Defendants, in fact, did the opposite, "misrepresent[ing] to the Plaintiff, her physicians, and to the medical community at large, that its product had been properly cleared for marketing by the FDA when in fact no such clearance had been sought or obtained."[10] Plaintiff claims that Defendants used "reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial media" to make these misrepresentations and to sell Prolift.[11]

Plaintiff brings the following claims against Defendants under Louisiana law: (1) Prolift was defectively designed; (2) Prolift was defectively manufactured; (3) Defendants failed to warn Plaintiff of the risks of Prolift; and (4) Defendants breached an express warranty when they sold Prolift.[12]

---

[6] *Id.* at 5.

[7] *Id.* at 10.

[8] *Id.* at 11.

[9] *Id.* at 12.

[10] *Id.* at 13.

[11] *Id.* at 16.

[12] *Id.*

On June 26, 2020, after Plaintiff failed to effectuate timely service, the Court issued an Order to Show Cause.[13] On July 21, 2020, Plaintiff's counsel sent summons to Defendants via email.[14] On July 29, 2020, Plaintiff filed a response to the Order to Show Cause, claiming to have served Defendants and seeking additional time to wait for an appearance or to attempt to re-serve each defendant.[15] On October 2, 2020, the Court issued a second Order to Show Cause, noting that the record showed that Ethicon had been served but that Johnson & Johnson and Gynecare had not been served properly.[16] On October 16, 2020, counsel for Defendants filed a Notice of Special Appearance.[17]

Defendants filed the instant motion on October 23, 2020.[18] Plaintiff filed an opposition on November 10, 2020.[19] Defendants, with leave of Court, filed a reply in further support of the motion on November 16, 2020.[20] Plaintiff, with leave of Court, filed a sur-reply on November 18, 2020.[21] On December 2, 2020, the Court held oral argument on the motion.[22]

## II. Parties' Arguments

### A.  *Defendants' Arguments in Support of the Motion*

Defendants argue that Plaintiff was "unjustified" in failing to serve Defendants within 90

---

[13] Rec. Doc. 4.

[14] Rec Doc. 8; Rec. Doc. 9; Rec. Doc. 10.

[15] Rec. Doc. 11.

[16] Rec. Doc. 12.

[17] Rec. Doc. 13.

[18] Rec. Doc. 14.

[19] Rec. Doc. 16.

[20] Rec. Doc. 20.

[21] Rec. Doc. 24.

[22] Rec. Doc. 21.

days of filing the Complaint, as required by Federal Rule of Civil Procedure 4(m).[23] Defendants assert that this Court can extend the time for service only if Plaintiff can show good cause for her failure to properly serve Defendants.[24] Defendants argue that Plaintiff cannot show good cause for the delay and, accordingly, this Court should dismiss Plaintiff's claims against Defendants.[25]

Defendants contend that "the record . . . reflects that Plaintiff actually made no effort to serve Defendants until after the deadline had already expired."[26] Defendants assert that Plaintiff failed to make any attempt to serve Defendants prior to this Court's Order to Show Cause, issued on June 26, 2020, which was two days after the deadline for service of process had expired.[27] Even when Plaintiff did begin "her efforts to communicate with Defendants regarding service of process," Defendants allege, Plaintiff's counsel still did not "attempt service."[28] Instead, Defendants assert that Plaintiff's counsel sent incomplete forms for waiving formal service and sent Ethicon's documents to the wrong address.[29] Moreover, Defendants argue that Gynecare ceased to exist as a separate entity in January 2000, so Plaintiff's "alleged attempt at 'service' in June 2020 was not actually an effective means of service under Rule 4 and should not have been considered as such by Plaintiff."[30]

Defendants further allege that Plaintiff has failed to offer any excuse for the untimely

---

[23] Rec. Doc. 14-1 at 9.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 10.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 10–11.

4

service.[31] Defendants contend that "Plaintiff generally discussed business and governmental closures caused by the COVID-19 pandemic" in Plaintiff's response to the Order to Show Cause, but Defendants assert that the deadline to effect service of process was not impacted by any emergency COVID-19 orders.[32] Defendants argue that "the record reflects that Plaintiff's failure to effectuate timely service was due to simple inattention to Rule 4(m), coupled with an apparent misunderstanding of the requirements and legal effect of a request for waiver of service under Rule 4(d)."[33] Defendants contend that these reasons for untimely service do not rise to the level of good cause necessary to excuse Plaintiff's delay.[34] Defendants argue that, even if granting dismissal would mean that Plaintiff would be time-barred from re-filing this action, this Court should "disregard that argument," because to do otherwise would be "granting Plaintiff a *de facto* extension of the statute of limitations while forcing Defendants to litigate a case that—under a clear reading of the text of Rule 4(m)—they would expect to be dismissed."[35]

## B. *Plaintiff's Arguments in Opposition to the Motion*

Plaintiff responds to the motion by making three main arguments. First, Plaintiff argues that there is good cause to excuse her failure to effectuate timely service on Defendants.[36] Plaintiff points to the COVID-19 pandemic, which caused Defendants' offices to close and Plaintiff's counsel's office to switch to remote work, as evidence of good cause for delay.[37] Second, Plaintiff

---

[31] *Id.* at 11.

[32] *Id.* at 10.

[33] *Id.* at 11.

[34] *Id.*

[35] *Id.* at 11–12.

[36] Rec. Doc. 16 at 2.

[37] *Id.* at 2–6.

provides several additional arguments for why dismissal would be improper.[38] Third, Plaintiff argues that Defendants' motion is untimely.[39]

First, Plaintiff argues that there is good cause to excuse the untimely service.[40] Plaintiff contends that she initially attempted to serve Defendants at what Plaintiff believed to be the correct corporate addresses, based on "publicly available information."[41] Plaintiff alleges that address information for Defendants was "not easily found," but that Plaintiff "continued trying to verify the listed addresses after the lawsuit was filed."[42] Plaintiff alleges numerous examples of the ways in which Plaintiff attempted to locate Defendants' addresses.[43]

Plaintiff claims that she was contacted by Defendants' counsel shortly after the case was filed "for purposes of discussing settlement of Ms. Crane's claims."[44] Plaintiff alleges that Plaintiff's counsel "mistakenly believed this communication was in response to service of the lawsuit."[45] Plaintiff claims that, after this initial communication with Defendants, Defendants failed to respond to later phone messages and emails.[46]

Plaintiff alleges that she later attempted to contact process servers, but was told that Defendants' offices were closed due to the COVID-19 pandemic.[47] Plaintiff claims that she

---

[38] *Id.* at 12.

[39] *Id.* at 14.

[40] *Id.* at 2.

[41] *Id.* at 3.

[42] *Id.* at 4.

[43] *Id.* at 5–6.

[44] *Id.* at 6.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 4.

continued to attempt to serve process through a process server throughout April, May, and June, but was "verbally advised that [Johnson & Johnson] was still not accepting personal service and that their offices were still closed to all but employees" due to the COVID-19 pandemic.[48] Plaintiff claims that, after an unsuccessful attempt at service by mail, Plaintiff then contacted a new company to serve process who "advised that they could serve the Defendants . . . ."[49] Plaintiff claims that she did not know that the company would serve Defendants through email, but that service via email was "accepted by the legal departments of each corporation[]" and that email was the "only way to effect service on these corporations at this time, because their office buildings are still closed to the public."[50] Plaintiff asserts that Defendants' decision to "close[] the doors to their offices and refuse[] to permit entry of process servers," constitutes "evasion of service."[51] Plaintiff alleges that she has "no control over the Global Pandemic, government reactions to the pandemic, or the Defendant's [sic] safety procedures imposed in reaction to the pandemic."[52]

Plaintiff also alleges that COVID-19 interfered with the work of Plaintiff's counsel, thereby also constituting good cause for the delay.[53] Plaintiff asserts that the COVID-19 pandemic caused Plaintiff's counsel's office to transition to remote-working but that the office was "not set up for more than a limited ability to work remotely."[54] Plaintiff claims that Plaintiff's counsel incorrectly believed that counsel's legal assistant had mailed the service documents to Defendants in April,

---

[48] *Id.* at 7.

[49] *Id.* at 8.

[50] *Id.*

[51] *Id.* at 10.

[52] *Id.*

[53] *Id.* at 2.

[54] *Id.* at 11.

2020.[55] Plaintiff claims that remote working "seems to have led to the breach in communication" in which Plaintiff mistakenly believed that service had been effectuated by counsel's legal assistant.[56] Plaintiff further alleges that counsel's legal assistant resigned in May, 2020, adding further confusion to whether service had, in fact, been made.[57]

Plaintiff argues that several other factors also weigh against dismissal. Plaintiff contends that Defendants "were aware of this lawsuit [] shortly after it was filed on March 26, 2020."[58] Plaintiff claims that dismissal is not warranted "where defective service did not prejudice defendant, who had actual notice of lawsuit and secured additional time to file answer . . . ."[59] Plaintiff alleges that Defendants have "so far secured more than three months of time to Answer" by "refusing to accept personal service," and thereby have not been prejudiced by Plaintiff's untimely service.[60] Further, Plaintiff alleges that granting Defendants' motion to dismiss would prejudice Plaintiff because the statute of limitations on her claim against Defendants would have run, prohibiting Plaintiff from re-filing her claims.[61]

Finally, Plaintiff argues that Defendants' motion is untimely.[62] Plaintiff alleges that Defendants accepted service via email on July 21, 2020.[63] Plaintiff asserts that Defendants have

---

[55] *Id.* at 6.

[56] *Id.* at 11–12.

[57] *Id.* at 6–7.

[58] *Id.* at 12.

[59] *Id.*

[60] *Id.* at 13.

[61] *Id.*

[62] *Id.* at 14.

[63] *Id.* at 14–16.

still "not filed an Answer and did not file the instant Motion to Dismiss until October 23, 2020—ninety-four (94) days after [accepting] email service."[64]

C.     *Defendants' Arguments in Further Support of the Motion*

Defendants allege that "Plaintiff has offered no proof that she made any attempt to serve Defendants prior to the expiration of the deadline for service of process set forth in Federal Rule of Civil Procedure 4(m)."[65] Defendants assert that Plaintiff's claims relating to the effect of COVID-19 on her attempts to serve process on Defendants "do not withstand scrutiny."[66] Defendants assert that Plaintiff's argument that service was affected by her counsel's office switching to remote working is unsubstantiated, as "Plaintiff had no trouble initiating her action" despite her counsel working remotely at the time and because Plaintiff's counsel returned to in-person working "a full month before the service deadline expired."[67]

Defendants further allege that "there is no evidence to support much less explain the basis for [Plaintiff's] belief" that Plaintiff's counsel's legal assistant had effectuated service.[68] Defendants argue that, "whether by mistaken belief or simple inadvertence," Plaintiff's failure to serve Defendants warrants dismissal.[69] Defendants also contend that Plaintiff could have located Defendants' proper address for service.[70] Defendants argue that their addresses are easily found

---

[64] *Id.* at 16.

[65] Rec. Doc. 20 at 1.

[66] *Id.* at 3.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* at 4.

through a search of New Jersey Division of Revenue's records.[71]

Defendants assert that Plaintiff's claims regarding Defendants' offices being closed, and service therefore being impossible, have "no merit."[72] Defendants argue that Plaintiff has provided no proof that Plaintiff attempted to contact process servers.[73] Defendants allege that, even if it was true that Plaintiff could not have effectuated personal service on Defendants' physical office, physical service is "only one of several methods of service authorized under Rule 4."[74] Defendants assert that Plaintiff could have served Defendants through any methods permissible to serve an individual under Rule 4 or through any method permissible under Louisiana state law.[75] Defendants contend that one permissible method would have been through certified mail but that Plaintiff failed to properly serve Defendants through certified mail.[76]

Defendants refute Plaintiff's argument that she will be prejudiced by dismissal, arguing that "the running of the prescriptive period is not relevant to the Rule 4(m) analysis."[77] To the contrary, Defendants allege that this is instead an "aggravating factor" weighing on the side of dismissal.[78]

Lastly, Defendants contend that their motion is not untimely.[79] Defendants allege that they

---

[71] *Id.*

[72] *Id.* at 5.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 6.

[76] *Id.*

[77] *Id.* at 7.

[78] *Id.* at 7–8.

[79] *Id.* at 8.

"were under the distinct impression that Plaintiff would attempt to serve them by another method or, alternatively, send a proper request for waiver of service" after Plaintiff requested additional time for service following this Court's Order to Show Cause.[80] Defendants allege that they "anticipated that this Court may take further action on its Show Cause Order, either by dismissing this action *sua sponte*, granting Plaintiff's additional time to perfect service of process, or finding that Plaintiff's prior attempts at service were sufficient."[81] As such, Defendants argue that the timing of the instant motion was "reasonable under the circumstances."[82]

### D.     *Plaintiff's Arguments in Further Opposition to the Motion*

Plaintiff responds to Defendants' arguments by first re-asserting that Defendants' "evasion of service," when Defendants closed their office buildings due to the COVID-19 pandemic, constituted good cause for delay.[83] Plaintiff alleges that service via email is not a permissible method of service under the Federal Rules of Civil Procedure, so Defendants' arguments that Plaintiff could have timely served Defendants through email is incorrect.[84] Plaintiff argues that Louisiana service rules do not apply to the instant dispute.[85] Plaintiff claims that, even if Louisiana rules did apply, Louisiana Governor Edward suspended legal time periods due to the COVID-19 pandemic, including the time for service of process.[86] Plaintiff alleges that, contrary to Defendants' arguments, she can provide evidence of her attempts to serve Defendants and attaches an affidavit

---

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] Rec. Doc. 24 at 1.

[84] *Id.*

[85] *Id.* at 2.

[86] *Id.*

of Plaintiff's counsel to the sur-reply brief to support her claims.[87]

Plaintiff contends that this Court has discretion to extend the time for service, even in the absence of good cause for delay.[88] Plaintiff argues that the Court should exercise its discretion to extend the time for service in this case.[89] Plaintiff argues that her claim would likely be prescribed if Defendants' motion to dismiss is granted.[90] Further, Plaintiff contends that service was mailed to Ethicon at an incorrect address on June 30, 2020.[91] Plaintiff alleges that this address, however, was the address of "another Johnson & Johnson subsidiary" that signed for the documents but "failed to notify Plaintiffs' [sic] counsel that the service was defective, that the Ethicon subsidiary was not located at that location or to return the service."[92] Likewise, Plaintiff claims that Johnson & Johnson received service documents that Plaintiff mailed, yet failed to notify Plaintiff "of the supposed defects in service."[93]

Finally, Plaintiff argues that Defendants "cannot deny the[y] had notice of both the lawsuit and the claims against them."[94] Plaintiff alleges that Defendants' counsel "contacted the Plaintiffs' [sic] counsel about the lawsuit and possibility of settlement within days of the lawsuit being filed with this court."[95] Therefore, Plaintiff contends that Defendants "have offered no adequate

---

[87] *Id.*

[88] *Id.* at 3.

[89] *Id.*

[90] *Id.* at 5.

[91] *Id.*

[92] *Id.*

[93] *Id.* at 5–6.

[94] *Id.* at 6.

[95] *Id.*

explanation of why the Plaintiff must be held to a strictest adherence to the time periods in the Rules of Civil Procedure and demand the hardest of remedies, while Defendants face no consequences for their evasion of proper service and failure to timely file a response after they accepted service."[96]

### III. Legal Standard

When service of process is challenged, the party responsible for effecting service bears the burden of establishing its validity.[97] Federal Rule of Civil Procedure 4 governs service of process generally, and Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The burden is clearly on the plaintiff to show good cause as to why service was not effected timely,[98] and the plaintiff must demonstrate "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice."[99] Nonetheless, the Court has discretion under Rule 4(m) to extend the time for service even in the absence of good cause.[100]

### IV. Analysis

Defendants argue that "Plaintiff unquestionably did not serve Defendants within the 90-

---

[96] *Id.* at 7.

[97] *Aetna Bus. Credit., Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981).

[98] *McGinnis v. Shalala*, 2 F.3d 548, 550 (5th Cir. 1993).

[99] *Gartin v. Par Pharm. Cos. Inc.*, 289 F. App'x 688, 692 (5th Cir. 2008) (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)).

[100] *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013); *see also Newby v. Enron Corp.*, 284 F. App'x 146, 149 (5th Cir. 2008).

13

day window required by Rule 4(m)."[101] Plaintiff contends that while service was untimely, her claims should not be dismissed because the delay was caused by the COVID-19 pandemic.[102] Additionally, Plaintiff contends that Defendants "were admittedly aware of the lawsuit within days of filing," and therefore, have not been prejudiced by delayed service.[103] Instead, Plaintiff argues that it is Plaintiff herself who would be prejudiced by dismissal because she would be barred from re-filing her claims due to the running of the statute of limitations.[104] Finally, Plaintiff argues that Defendants' motion to dismiss is untimely because the motion was Defendants' first appearance in the case and was filed 94 days after Defendants were served.[105]

Plaintiff filed the Complaint on March 26, 2020.[106] However, Plaintiff did not serve Defendants until July 21, 2020.[107] Plaintiff does not dispute that service was untimely.[108] Plaintiff carries the burden to demonstrate good cause for the failure to comply with Rule 4.[109] Plaintiff states that the delay was caused by the COVID-19 pandemic, leading Defendants to close their physical offices and Plaintiff's counsel to begin remote work.[110] Therefore, Plaintiff asserts that she was unable to personally serve Defendants and that Plaintiff's counsel mistakenly thought

---

[101] Rec. Doc. 14-1 at 9.

[102] Rec. Doc. 16 at 2.

[103] *Id.* at 13.

[104] *Id.*

[105] *Id.* at 16.

[106] Rec. Doc. 1.

[107] Rec. Doc. 8; Rec. Doc. 9; Rec. Doc. 10.

[108] Rec. Doc. 16.

[109] *McGinnis*, 2 F.3d at 550.

[110] Rec. Doc. 16 at 2.

14

counsel's legal assistant had mailed the necessary documents to Defendants.[111] Although the mistaken belief that counsel's legal assistant had mailed the documents alone would be insufficient to establish good cause, the combined effect of everything else, and in particular the havoc caused by the COVID-19 pandemic, rises to the level of good cause necessary to support an extension of time for Plaintiff to effect service.

Alternatively, even assuming this explanation would not justify an approximately 27-day delay in service, the Court has discretion under Rule 4(m) to extend the time for service even in the absence of good cause.[112] Dismissing the case without prejudice under Rule 4(m) could result in Plaintiff being unable to pursue these claims because a subsequently filed case may be barred by the statute of limitations. Furthermore, it appears that Defendants had actual notice of this case shortly after it was filed when Defendants' counsel contacted Plaintiff's counsel to discuss settlement. Accordingly, under the circumstances, the Court exercises its discretion under Rule 4(m) to extend the time for service.

## V. Conclusion

For the reasons discussed above, the Court denies the motion to dismiss for untimely service. Plaintiff has shown good cause to excuse the delay in service. Alternatively, the Court exercises its discretion under Rule 4(m) to extend the time for service, even in the absence of good cause. Accordingly,

---

[111] *Id.* at 7, 11.

[112] *Thrasher*, 709 F.3d at 511; *see also Newby*, 284 F. App'x at 149.

**IT IS HEREBY ORDERED** that Defendants' "Motion to Dismiss Plaintiff's Complaint for Untimely Service of Process"[113] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __4th__ day of December, 2020.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[113] Rec. Doc. 14.